DAVID A. VANALSTYNE, JR. vs. RICHARD WHALEN.

Berkshire. December 14, 1982. — February 22, 1983.

Present: ARMSTRONG, GREANEY, & SMITH, JJ.

*Negligence*, Motor vehicle. *Practice, Civil,* New trial, Relief from judgment. *Judgment,* Relief from judgment.

In an action to recover for personal injuries, evidence that the plaintiff, a fifteen year old boy, had either been running alongside an automobile driven by a seventeen year old friend or leaning on its windowsill on the driver's side for at least 200 feet as the automobile accelerated, that he suddenly disappeared, and that the defendant made no effort to slow down or stop until he saw in his rearview mirror the plaintiff lying in the road warranted the judge in denying the defendant's motion for a directed verdict and in leaving the issues of the defendant's negligence and the plaintiff's contributory negligence to the jury. [341-344]

The judge in an action to recover for personal injuries sustained in an automobile accident did not abuse his discretion in allowing the plaintiff's motion for relief from judgment, and in limiting retrial solely to the issue of damages, on the basis of an affidavit by a physician that some weeks after entry of judgment the plaintiff exhibited epileptic symptoms, that the plaintiff's epilepsy was caused by the accident, and that there was no medically discoverable evidence of the plaintiff's epileptic condition until the appearance of symptoms after entry of judgment. [344-353]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1979.

The case was tried before *Urbano, J.,* and a motion for relief from judgment was heard by him.

*David O. Burbank* for the defendant.

*John J. C. Herlihy (Karen M. Thursby* with him) for the plaintiff.

GREANEY, J. In this personal injury case tried to a jury in the Superior Court, the defendant challenges orders of the trial judge denying his motion for a directed verdict, Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974), allowing the

plaintiff's motion for relief from the judgment, Mass.R.Civ. P. 60(b)(2), 365 Mass. 828 (1974), and ordering a new trial solely on the issue of damages because of newly discovered evidence. The defendant contends that there was no evidence to show that he operated a motor vehicle negligently, or, if he did so operate, to show that his negligence was the proximate cause of the plaintiff's injuries. He further contends that evidence that the plaintiff began to suffer from epilepsy shortly after the judgment was entered was not "newly discovered" within the meaning of that term in rule 60(b)(2). We find no error.

1. We summarize the relevant evidence in the light most favorable to the plaintiff, see *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 282 (1978), under the familiar standard applicable to motions for directed verdicts grounded on the sufficiency of the plaintiff's case. Such motions must be denied if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency*, 315 Mass. 301, 302 (1943). See also *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976); *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 876 (1978), and cases cited.

In June, 1978, the plaintiff, age fifteen, was living with his parents on Undermountain Road in Lenox. He was at the time approximately four feet eight inches tall and was considered extremely small for his age.

Sometime during the afternoon of Sunday, June 25, 1978, the plaintiff met three friends: James Prince, Gary Roy, and the defendant Richard Whalen, age seventeen. The four young men spent the afternoon together, separated to have dinner at their respective homes and congregated again at approximately 6:15 P.M. to go swimming at the plaintiff's house. About 7:00 P.M., the defendant, who had been licensed to operate motor vehicles for at least six months, prepared to leave with Roy. The defendant was driving his father's automobile, a 1973 two-door Chevrolet

Impala sedan with automatic transmission. Roy was in the passenger seat. While the defendant was backing the vehicle out of the driveway of the VanAlstyne home, the plaintiff discovered that the defendant had left a towel behind. The plaintiff, who was dressed in a shirt and gym shorts, went around to the driver's side of the vehicle with the towel. The plaintiff and defendant then began conversing through the open driver's side window, the plaintiff walking alongside as the defendant backed the automobile into the street. At this point, the plaintiff was beside the automobile and leaning on its door. The defendant then drove forward.

The passenger Roy testified that he observed the plaintiff leaning on the automobile and talking to the defendant as the vehicle proceeded southerly on Undermountain Road. Roy described the plaintiff as continuing to "shuffle" alongside the moving vehicle at a pace "like a fast run" for fifteen or twenty feet as the automobile accelerated. Roy then looked away and did not again observe the plaintiff until after the accident. According to Roy, the automobile reached a speed between twenty-five and thirty miles per hour before it stopped. The defendant testified that the plaintiff remained alongside his automobile as it proceeded south on Undermountain Road, at times coming as close as six inches to the vehicle. The defendant also testified that he was aware of the plaintiff's presence beside the moving vehicle for approximately 210 to 230 feet while he continued to increase the vehicle's speed. Although the defendant was no longer aware of the plaintiff after the vehicle had travelled slightly more than 200 feet, he made no attempt to slow down or stop. The defendant later told the plaintiff's mother that "Davie [the plaintiff] was hanging on to the car . . . with his elbows and then . . . he was gone."

The defendant, continuing to drive, observed the plaintiff in his rearview mirror, lying on the road. Upon seeing him, the defendant immediately brought the vehicle to a skidding stop approximately 460 to 465 feet from the point where it had started. The plaintiff was face down, to the

left of the road's center relative to the vehicle's direction of travel, and approximately fifteen to twenty feet behind the stopped automobile. The plaintiff suffered severe injuries which left him in a coma for three days and caused bizarre behavior after he woke from the coma. He had no memory of the incident. Although the plaintiff is a diabetic, his neurosurgeon testified that his coma and unusual behavior during recovery were the result of and consistent with a bi-frontal cerebral contusion with swelling and areas of hemorrhage in the brain caused by an automobile accident rather than a diabetic coma. Both this physician and the otolaryngologist who set the plaintiff's fractured nose generally agreed that his injuries were "inconsistent with a simple fall for whatever reason."

On the foregoing evidence the jury could infer: (a) that the plaintiff was leaning on the windowsill on the driver's side of the vehicle after it backed out of the driveway and had begun to accelerate; (b) that he continued to be in contact with or close to the vehicle, running alongside the driver's side as the automobile gained speed; (c) that the plaintiff at a point about 210 to 230 feet southerly of the vehicle's starting point had either purposely grabbed onto, or inadvertently come into contact with, some part of the automobile which by then was accelerating rapidly; and (d) that he continued to be in contact with the moving vehicle for some two hundred feet, until it attained a speed of between twenty-five and thirty miles per hour, at which point he lost contact and was thrown to the pavement. Based on evidence of the plaintiff's presence alongside the accelerating vehicle for approximately 210 to 230 feet, and the defendant's conversation with the plaintiff's mother, the jury could conclude that the defendant should have foreseen the danger to the plaintiff occasioned by his proximity to and contact with the moving vehicle and avoided it by stopping or slowing the automobile. The jury could also find that alternative causes of the accident had been satisfactorily excluded. There was no evidence of another vehicle which might have struck the plaintiff. The evidence that the

plaintiff was alongside the vehicle for some distance and then "was gone" made it appear unlikely that he had hitched a ride on the back of the automobile. The fact that there was no precise explanation of exactly how the plaintiff might have become attached to the side of the vehicle is not fatal to recovery. This aspect of the proof, in our view, is governed by the principle that a plaintiff need not prove the exact manner in which the accident happened so long as he proves that there was a greater probability that the harm complained of was due to causes for which the defendant was responsible than any other cause. *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 128 (1980), and cases cited; Restatement (Second) of Torts § 433B comment b (1965). Taking all of the circumstances disclosed by the evidence in the light most favorable to the plaintiff, the jury were warranted in concluding that the defendant should not have "ignore[d] the presence of the [plaintiff]," and that he failed "to use a degree of care commensurate to the probable harmful consequence that might result . . . from the lack of the exercise of such care." *Hanlon* v. *White Fuel Corp.*, 328 Mass. 455, 457-458 (1952). See also *Margeson* v. *Town Taxi, Inc.*, 266 Mass. 192, 194 (1929); *DaSilvia* v. *Dalton*, 322 Mass. 102, 103 (1947); *Barry* v. *Panich*, 324 Mass. 162, 163-164 (1949), and cases cited. Cf. *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 327-331 (1973). The judge properly denied the defendant's motion for a directed verdict and left the issues of the defendant's negligence and the plaintiff's contributing negligence to the jury.

2. The jury returned a verdict and, in answer to special questions, found the defendant negligent and the plaintiff contributorily negligent, fixed the percentages of negligence at sixty-five and thirty-five percent respectively, and awarded total damages of $50,000. The evidence at trial as to the plaintiff's injuries was substantially uncontradicted and may be summarized as follows. While still at the scene of the accident, the plaintiff stopped breathing twice and was mechanically revived. He arrived at the hospital semi-

comatose from his head injuries (which as previously noted included a bifrontal cerebral contusion and brain hemorrhage) and with multiple abrasions on his head, torso and extremities. He regained consciousness on the fourth day following. He exhibited spasmodic muscle contractions and unusual restlessness and irritability which generally decreased during the course of a three-week hospital stay. The irritability continued somewhat, however, after his return home. There was evidence of permanent impairment of his intellectual and memory functions. He also suffered serious injuries to his nose and teeth.

Judgment entered in accordance with the jury's verdict and answers on April 8, 1981, in the amount of $32,500 with interest. On April 15, 1981, the defendant moved for judgment notwithstanding the verdict, see Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), which was denied on April 27, 1981. On June 10, 1981, the plaintiff moved for relief from the judgment and a new trial on the issue of damages, pursuant to Mass.R.Civ.P. 60(b)(2), 365 Mass. 828 (1974), on the basis of newly discovered evidence (the ten-day period for a motion for new trial prescribed in Mass.R.Civ.P. 59[b], 365 Mass. 827 [1974], having by then expired). The motion was supported by an affidavit of Dr. G. Thomas Stowe. Dr. Stowe was, at that time, associated with the neurosurgeon who had treated the plaintiff and testified at trial. Dr. Stowe's affidavit reads in full as follows:

"I am a licensed and practicing neurologist in Pittsfield, Massachusetts. In my capacity as a neurologist, I examined and treated David A. VanAlstyne, Jr., of Lenox, Massachusetts, for the first time in June 1981, at which time he had an arrest of speech. This was due to epileptiform discharges from the speech area of the left temporal lobe hemisphere, as evidenced on EEG. Resolution of the problem followed institution of Dilantin therapy. There was no motor deficit.

"CT scanning demonstrated atrophy in the left temporal lobe region as manifest by a ventricular enlargement in the area.

VanAlstyne v. Whalen.

"In my opinion, with reasonable medical certainty, this condition which presented itself with seizure activity in May 1981, was a direct consequence of a head injury that David suffered in an automobile accident of June 25, 1978. This condition is another aspect of the known, pre-existent head injury which was undiagnosable until its manifestation in May 1981. No amount of care could have revealed this pre-existing condition until its manifestation in May and June of 1981.

"David's health status is significantly worsened by the appearance of this disorder which is of a permanent nature requiring life-long use of anticonvulsant medication in order to avoid reoccurrence of the symptoms."

A hearing was held on the motion. In addition to Dr. Stowe's affidavit, the plaintiff presented records from the Berkshire Medical Center pertaining to the hospitalization which ultimately led to the diagnosis of epilepsy. The defendant offered no medical evidence by means of affidavit or otherwise to contradict the plaintiff's materials. Further, the defendant conceded at the hearing that the material in Dr. Stowe's affidavit was undisputed.

On October 2, 1981, the judge allowed the motion, stating in his memorandum of decision, that "the evidence of the plaintiff's epileptic condition is newly discovered, would materially affect the amount of damages awarded to the plaintiff, could not have been discovered in time to move for a new trial and thus justifies relief from the operation of the judgment." The judgment was vacated and a new trial ordered solely on the issue of damages.

Dr. Stowe's affidavit indicates that, although the plaintiff's epileptic condition was "another aspect of the known, pre-existent head injury," the condition was "undiagnosable" until its postjudgment manifestation and "[n]o amount of care could have revealed this pre-existing condition until its manifestation . . . ." It can be reasonably inferred from this uncontradicted statement that the condition existed at the time of trial, in the sense that its etiology was directly traceable to the injuries sustained by the plain-

tiff in the accident, but that there was no medically discoverable evidence of the condition's existence until it caused a seizure some weeks after judgment had entered. In short, while the fact of the latent condition existed at trial, evidence of its existence did not.[1]

Rule of civil procedure 60(b)(2) provides for relief from judgment within one year of the entry thereof in cases where there has been "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 59 motions are timely if "served not later than 10 days after the entry of judgment." "Except for the differing time limit, relief under either rule [59(a)(1) or rule 60(b)(2) for newly discovered evidence] requires the same showing." Smith & Zobel, Rules Practice § 59.5 (1977). 11 Wright & Miller, Federal Practice and Procedure § 2859, at 182 (1973). It is not disputed that the plaintiff's epileptic symptoms first exhibited themselves more than ten days subsequent to the entry of the judgment. The defendant points to the following language in the Reporters' Notes to rule 60: "It is . . . settled practice that the phrase 'newly discovered evidence' refers to evidence in existence at the time of trial but of which the moving party was excusably ignorant. *Brown* v. *Pennsylvania R. Co.* [, 282 F.2d 522 (3d Cir. 1960), cert. denied, 365 U.S. 818 (1961)]. The results of a new physical examination are not 'newly discovered evidence' within the meaning of the Rules. *Ryan* v. *U.S. Lines Co.*, 303 F.2d 430 (2nd Cir. 1962)." Mass. Ann. Laws, Rules of Civil Procedure at 586 (1982). The defendant argues that the evi-

---

[1] There was testimony at trial as to the prognosis for the plaintiff (including indicated future medical procedures and the permanent effects of his head injuries) which the jury may have used in their computation of damages. See *Rodgers* v. *Boynton*, 315 Mass. 279, 280 (1943); *Cuddy* v. *L & M Equip. Co.*, 352 Mass. 458, 462 (1967). There was nothing before the jury, however, to indicate a likelihood that his injuries could lead to future epileptic seizures. There is no basis to conclude that the jury's award of damages contained compensation for the plaintiff's being at risk with respect to epilepsy as a result of the accident.

dence of the plaintiff's epilepsy does not satisfy the quoted requirement.

Despite the language in the Reporters' Notes, there appears to be a difference among the Federal cases as to the standard governing newly discovered evidence. There is, on the one hand, a substantial body of Federal case law which holds that in order to be "newly discovered," evidence must have been in existence, see *Ryan* v. *U.S. Lines Co., supra* at 434; *Goland* v. *Central Intelligence Agency,* 607 F.2d 339, 371 n.12 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980); *Petition of Boeing Airplane Co.,* 23 F.R.D. 264, 265 (D.D.C. 1959), modified on other grounds sub nom. *Boeing Airplane Co.* v. *Coggeshall,* 280 F.2d 654 (D.C. Cir. 1960); *Hughes* v. *Sanders,* 287 F.Supp. 332, 334 (E.D. Okla. 1968). There is also, however, a substantial body of Federal precedent to the effect that it is not the *evidence,* but the *fact* which the evidence is offered to support, which must have been in existence during the trial. See *Campbell* v. *American Foreign S.S. Corp.,* 116 F.2d 926, 928 (2d Cir.), cert. denied, 313 U.S. 573 (1941); *United States* v. *449 Cases, More or Less, Containing Tomato Paste,* 113 F.Supp. 114, 115 (E.D.N.Y. 1953), rev'd on other grounds, 212 F.2d 567 (2d Cir. 1954); *Kender* v. *General Expressways, Ltd.,* 34 F.R.D. 237, 239 (E.D. Pa. 1963). See also *Prostrollo* v. *University of S.D.,* 63 F.R.D. 9, 11 (S.D.S.D. 1974) (a case which appears to approve both tests in circumstances suggesting that neither the fact nor the evidence existed at trial). Compare discussion in 11 Wright & Miller, *supra* § 2808, at 55 (facts in existence) with discussioin in § 2859, at 182 (evidence in existence). Any difference in the standards will in the majority of cases be of little practical significance since facts and the evidence which proves them normally come into existence simultaneously. In cases of hidden medical conditions like the one under consideration, however, different results could follow upon application of the competing Federal tests — the allowance of the plaintiff's 60(b)(2) motion likely being up-

held under the *Campbell* line of cases, but reversed under the *Ryan* line of authority.[2]

It is unnecessary, in order to dispose of this case, to explore further the difference between the Federal formulations. While it is the usual approach to construe our rules of civil procedure like their Federal counterparts, see *Rollins Environmental Servs. Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975); *Chavoor* v. *Lewis*, 383 Mass. 801, 806 n.5 (1981); *Westinghouse Elec. Supply Co.* v. *Healy Corp.*, 5 Mass. App. Ct. 43, 47 (1977), and to look to Federal case law as persuasive authority to decide questions closely related to but not addressed by the Federal Rules of Civil Procedure when we face similar questions under our rules, see, e.g., *Albano* v. *Bonanza Intl. Dev. Co.*, 5 Mass. App. Ct. 692, 693-694 (1977), there are exceptions to our reliance on Federal precedent. One exception applies to issues which are tangential to questions resolved by the Federal rules and which are directly addressed by State decisional or statutory sources. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 468 (1975). Such an issue is the definition of "newly discovered evidence," a term used in the Federal and State rules but defined in neither. In such an instance we deal with an issue where we may be best governed by our own precedents. There exists a well-developed body of Massachusetts case law dealing with the issue of newly discovered evidence.[3]

The governing principles were set forth by Chief Justice Field in *DeLuca* v. *Boston Elev. Ry.*, 312 Mass. 495, 497-498 (1942), as follows: "A new trial on the ground of newly discovered evidence cannot properly be granted unless it is found that the evidence relied on was not avail-

---

[2] An illustrative case in which the two tests would lead to different results is *United States* v. *449 Cases, More or Less, Containing Tomato Paste*, 113 F.Supp. 114 (E.D.N.Y. 1953).

[3] We find nothing to suggest that the term "newly discovered evidence" in rule 60(b)(2) was intended by the drafters of the rules to mean something different from the same term in rule 59(a)(1). As previously noted, commentators have concluded that the test under both rules is the same.

able to the party seeking a new trial for introduction at the original trial by the exercise of reasonable diligence, and that such evidence is material not only in the sense that it is relevant and admissible but also in the sense that it is important evidence of such a nature as to be likely to affect the result. And even if these facts are found, the judge is not necessarily bound to grant a new trial. There remains some room for the exercise of discretion by him. *Sherman* v. *Collingwood*, 221 Mass. 8, 14 [1915]. *Berggren* v. *Mutual Life Ins. Co.*, 231 Mass. 173, 176-177 [1918]. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496-497 [1920]. *Nicholas* v. *Lewis Furniture Co.*, 292 Mass. 500, 505 [1935]. Ordinarily, subject to these limitations, where, as here, no specific rulings of law are involved, the allowance or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound judicial discretion of the judge, and his action can be overturned only if it appears that there was abuse of such discretion amounting to error of law. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496-497 [1920]. *Madden* v. *Boston Elevated Railway*, 284 Mass. 490, 494 [1933]. *Nicholas* v. *Lewis Furniture Co.*, 292 Mass. 500, 505 [1935]. *Kinnear* v. *General Mills, Inc.*, 308 Mass. 344, 348-349 [1941]. See also *Nickerson* v. *Glines*, 220 Mass. 333, 335 [1915]; *Long* v. *George*, 296 Mass. 574, 579 [1937]." Our courts have consistently applied the *DeLuca* standard for newly discovered evidence, see *Spiller* v. *Metropolitan Transit Authy.*, 348 Mass. 576, 579 & n.3 (1965); *Flanagan* v. *John Hancock Mut. Life Ins. Co.*, 349 Mass. 405, 408 (1965), and have continued to do so since the adoption of the Massachusetts Rules of Civil Procedure, see *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 166, S.C. 376 Mass. 931 (1978). See also Nolan, Civil Practice § 853, at 93 (1975) ("Before a new trial will be granted on the ground of newly discovered evidence, it must appear that the evidence was discovered for the first time after the trial," citing *Herrick* v. *Waitt*, 224 Mass. 415, 418 [1916]). Cf. *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 654 & n.1 (1980), and *Kelly* v. *Kelly*, 12 Mass. App. Ct. 937, 938

(1981) (applying common law principles of cases cited in *DeLuca* to motions for new trials on grounds of newly discovered evidence in criminal and domestic relations proceedings, respectively).

The record shows substantial grounds for a determination by the judge that the evidence described in Dr. Stowe's affidavit was relevant, admissible, and likely to affect the jury's assessment of damages, and for a further (critical) finding that the proffered evidence was (in the language of *DeLuca*) "not available to the [plaintiff] . . . for introduction at the original trial" or within the period specified in rule 59(b), by the exercise of reasonable diligence. The defendant offered no evidence, medical or otherwise, which would contradict any of these conclusions, particularly the requirement of nonavailability. We conclude that the rule 60(b) (2) motion was properly allowed.[4]

The defendant suggests that the one-year period in which a 60(b) motion can be brought opens the field for possible abuse and will contravene the need for finality of judgments. A similar apprehension was addressed by the Supreme Judicial Court (through Chief Justice Rugg) some time ago in *Berggren* v. *Mutual Life Ins. Co.*, 231 Mass. at 177. "The mischief naturally flowing from retrials based upon the discovery of alleged new evidence leads to the establishment of a somewhat stringent practice against granting such motions unless upon a survey of the whole case a miscarriage of justice is likely to result if a new trial is denied. This is the fundamental test, in aid of which most if not all the rules upon the matter from time to time alluded to have been formulated. Ease in obtaining new trials would offer temptations to the securing of fresh evidence to

---

[4] We note that new trials have been allowed in other jurisdictions upon newly discovered evidence of more serious medical conditions than those shown to exist at the time of trial. See, e.g., *Bousman* v. *Stafford*, 71 Kan. 648 (1905) (plaintiff discovered to have a ruptured intestine and abdominal abscess in posttrial operation); *Bakelja* v. *James E. Strates Shows, Inc.*, 349 Pa. 442 (1944) (broken leg, assumed at trial to be "normal" fracture, revealed by posttrial operations to involve presence of foreign matter preventing proper healing and affecting prognosis).

supply former deficiencies. But courts cannot close 'their eyes to injustice on account of facility of abuse.' Nevertheless, most critical scrutiny must be given to the kind of evidence offered in support of the motion, to the sources from which it comes, and the circumstances under which it is produced." We think the admonitions just summarized will cause trial judges to look gimlet-eyed at the proffered new evidence and to reject most attempts to reopen the case. These principles, coupled with the breadth of the trial judge's discretion in allowing or denying a motion for new trial, whatever its ground, see *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 663-665 (1980), and parallel considerations of discretion in the rule 60 area, see generally *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433-434 (1979), provide adequate safeguards for institutional needs.

At oral argument, the defendant expressed concern that he would be at a disadvantage at retrial before a jury if left without the liability evidence and instructed to proceed solely on the issue of damages, based on what appears to be a significant newly discovered medical condition. The power to grant a retrial solely on the issue of damages is, of course, well within the scope of the rule. Obviously, the defendant's failure to rebut the plaintiff's offer of proof at the motion stage does not foreclose the production of contradictory evidence at the new trial on any issues relevant to damages, including medical causation. Moreover, the new assessment of damages will, on issue preclusion principles, be reduced by the percentages of comparative negligence found by the first jury. Finally, it is likely that the jury rehearing damages will become oriented to the salient features of the liability evidence by way of background information explained by counsel or through the testimony of the medical witnesses.

It was not necessary for the judge in allowing the plaintiff's rule 60(b)(2) motion to set aside the entire judgment. The fourth paragraph of the memorandum and order entered on October 2, 1981, is vacated. A new order is to

enter vacating only that portion of the judgment which pertains to the amount of damages, as to which the case is remanded for further proceedings.   So much of the judgment as pertains to liability is affirmed.

*So ordered.*