Botsford, J.
After a lengthy trial in the late fall of 2002, the jury found for the plaintiffs on all their claims against the defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). These claims included aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and violation of both the New York and Connecticut consumer protection statutes. The jury also found for the plaintiffs on their claims against all the other parties who were defendants in the claims tried to the jury; these included Benistar Property Exchange Trust Company, Inc. (Benistar Property) Daniel Carpenter, Molly Carpenter,[3] and Martin Paley.
Merrill Lynch moved for judgment notwithstanding the verdict (judgment NOV) on all four claims against them, and in a decision dated February 25, 2003, I allowed that motion [16 Mass. L. Rptr. 220].[4] Due to the fact that there were claims against a number of the Benistar defendants and Martin Paley that remained to be tried to the court following the jury trial, no final judgment entered in these cases after the jury returned their verdicts, and in fact a final judgment has still not entered in these consolidated cases.[5]
Presently before the court is the plaintiffs’ motion under Mass.R.Civ.P. 60(b)(2), to reinstate the jury verdict against Merrill Lynch.[6] An evidentiary hearing on this motion was held on May 18, 19, and June 2, 2004. For the reasons summarized below, I conclude that the plaintiffs’ request to reinstate the jury verdict should be denied, but that the plaintiffs are entitled to a new trial against Merrill Lynch.
Background
The judgment NOV that I granted in February 2003 was based on my conclusion that there was insufficient evidence presented as a matter of law to satisfy the plaintiffs’ obligation to prove (under New York law) that Merrill Lynch had aided and abetted the other defendants’ breach of fiduciary duly and conversion. In particular, I determined that (1) the plaintiffs had not presented the requisite proof of Merrill Lynch’s “actual knowledge” that the funds in the Benistar Property accounts at Merrill Lynch were actually third-party funds belonging to clients of Benistar Property which Benistar Property (through the individual defendants) was using to conduct option trading in violation of their fiduciary duties all these defendants owed to the clients; and (2) that the plaintiffs had also presented insufficient evidence that Merrill Lynch provided “substantial assistance” to these defendants in their breach of fiduciary duly. See Memorandum of Decision and Order on Motion for Judgment Notwithstanding the Verdict of Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., pp. 5-21 (February 25, 2003).[7]
The plaintiffs’ motion to reinstate is based on what they present as newly discovered evidence from two sources. The first is the defendant Martin Paley. Paley had asserted his Fifth Amendment privilege at trial in response to all questions put to him, and in that sense was unavailable at the time. In February 2004, Paley waived any Fifth Amendment privilege and provided an affidavit to the plaintiffs in which he stated that in October 1998, he had at least one very specific conversation with Gerald Levine, the broker at Merrill Lynch who was the lead broker for all Benistar and Benistar Property accounts there. Paley stated that in that conversation he informed Levine that Benistar Property was in the business of serving as a qualified intermediary for “like kind” property exchanges under §1031 of the Internal Revenue Code, and that the Benistar funds that would be wired to Merrill Lynch were in fact clients’ funds that Benistar was holding in escrow in its capacity as the §1031 intermediary.[8]
The Second source is David Patterson, Esquire. Patterson is an attorney with an office in Newton who has a general law practice with an emphasis on real estate. In 1998 Patterson represented an individual who sought to effectuate a § 1031 transaction, and who retained Benistar Property to serve as the qualified intermediary for her §1031 property exchange.[9] In March 2004, Patterson provided an affidavit to the *465 plaintiffs in which he described telephone conversations and written communications he had had with Gerald Levine between October 21 and October 23, 1998, in which he had explained that his client was seeking to perform a §1031 exchange with Benistar Property as the intermediary, and his client’s funds that would be sent to Merrill Lynch were to be held in escrow and subject to the control of Benistar Property (through Daniel Carpenter) as the intermediary. [10]
Gerald Levine had testified at trial in 2002 that he had no knowledge about Benistar Property’s business as a §1031 qualified intermediary, and no knowledge that the Benistar Property funds at Merrill Lynch which were being used for option trading were actually the funds of third-party clients rather than Benistar Property’s own corporate funds. He had testified that if he and Merrill Lynch had been aware that these were third-party or client funds, Merrill Lynch would not have permitted Benistar Property either to open corporate accounts or to use the funds for option trading. [11] Levine testified at the hearing on the motion to reinstate along with Paley and Patterson. He denied having any conversation with Paley in 1998 or at any time, denied or had no recollection of having had any conversation with Patterson, and denied ever receiving the documents, including the escrow agreement, that Patterson had faxed to him at Merrill Lynch on October 23, 1998. In substance, he reiterated his position at trial that before the filing of these cases he had no knowledge of Benistar Property’s line of business or of its use of client monies.
Discussion
The plaintiffs seek relief from the order allowing Merrill Lynch’s motion for judgment NOV under Mass.R.Civ.P. 60(b)(2).[12] They argue that it is appropriate to reinstate the jury’s verdict against Merrill Lynch on all the plaintiffs’ claims because the newly discovered evidence provided by Martin Paley and David Patterson fills in the evidentiary gaps concerning “actual knowledge” and “substantial assistance” on the part of Merrill Lynch that were the basis of the judgment NOV.
[Relief from an order] on the ground of newly discovered evidence cannot properly be granted unless it is found that the evidence relied on was not available to the party seeking [the relief] for introduction at the original trial by the exercise of reasonable diligence, and that such evidence is material not only in the sense that it is relevant and admissible but also in the sense that it is important evidence of such a nature as to be likely to affect the result. And even if these facts are found, the judge is not necessarily bound to grant [relief]. There remains some room for the exercise of discretion . . .
VanAlstyne v. Whalen, 15 Mass.App.Ct. 340, 349-50 (1983), S.C., 20 Mass.App.Ct. 239 (1985), aff'd, 398 Mass. 1004 (1986), quoting DeLuca v. Boston Elev. Ry., 312 Mass. 495, 497-98 (1942). I consider the Martin Paley and David Patterson evidence separately.
1. Martin Paley
There is no question that beginning with his deposition taken in the spring of 2001, Martin Paley asserted his privilege against self-incrimination under the Fifth Amendment and refused to answer any questions put to him during the deposition and again later at trial. The jury were instructed at trial that they could draw an adverse inference against Paley because he had invoked his Fifth Amendment privilege, but the availability of that inference provided nothing to the plaintiffs that could be used as evidence against Merrill Lynch. Compare Lentz v. Metropolitan Property and Gas. Ins. Co., 437 Mass. 23 (2002). It was not until early 2004 that Paley broke his silence, waived the privilege, and proffered the above-described evidence set out in his affidavit and his testimony at the motion hearing. Paley’s evidence is thus newly available, and as such, qualifies as “newly discovered.” See United States v. Montilla-Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997) (post-trial affidavits of witnesses who invoked their Fifth Amendment privilege not to testify at trial constitute newly discovered evidence). See also Commonwealth v. Evans, 439 Mass 184, 203 (2003) (treating newly available evidence from a witness who had previously asserted Fifth Amendment right not to testify as the equivalent of newly discovered evidence, and subject to same rules); Commonwealth v. Simmons, 417 Mass. 60, 71 (1994) (treating newly available evidence from a witness who was a fugitive from justice at the time of trial as newly discovered evidence).
It is also the case that Paley’s evidence, if believed, would be “likely to affect the result” reached in the order granting judgment NOV. Van Alstyne v Whalen, supra, 15 Mass.App.Ct. at 350 (quotation and citation omitted). This evidence does not simply impeach the credibility of Levine. Compare DeLuca v. Boston Elev. Ry., supra, 312 Mass. at 500. Rather, it provides affirmative evidence of “actual knowledge” on the part of Merrill Lynch (through its employee Levine) that not only were Benistar Property’s funds at Merrill Lynch third-party client funds rather than corporate funds, but that Benistar Property was supposed to be holding these funds in escrow for the clients.[13] Moreover, I agree with the plaintiffs that Paley’s information would help to satisfy the “substantial assistance” prong of aiding and abetting. This is so because, as Levine’s own testimony revealed, Benistar Property would not have been allowed to open corporate accounts and use them for option trading if the funds at issue were known to be third-party funds belonging to Benistar Property clients, but Levine and Gary Stem, the other broker in the group, nonetheless did take the necessary steps to open the corporate accounts and approve the option trading, and later assisted in the transfer of these corporate accounts to PaineWebber where option trading was allowed to continue.
*466 The difficulty with Paley’s newly discovered information is that its credibility is extremely questionable. As a result of the jury’s verdicts and my rulings on the plaintiffs’ claims under G.L.c. 93A against Paley, he is liable for damages well in excess of $16 million. It was after this liability was established that Paley has decided to waive his Fifth Amendment privilege and to provide the affidavit and subsequent testimony that the plaintiffs now offer, and Paley follows this course as a party to a settlement agreement with the plaintiffs which effectively erases his liability if the plaintiffs’ motion to reinstate the verdict is allowed.[14] This contextual information raises significant doubts for me about the truth of Paley’s evidence. Furthermore, quite apart from context, I found Paley’s testimony at the motion hearing to be inconsistent and incredible in a significant number of respects.
Although the plaintiffs point to some authority to the contrary, see Smith & Zobel, Rules Practice, 8 Massachusetts Practice Series §60.8 (1977), the credibility of witnesses offering “newly discovered” evidence is an issue that a judge may consider in ruling on a motion for post-trial relief. See, e.g., DeLuca v. Boston Elev. Ry., supra, 312 Mass. at 499-500. See also Commonwealth v. Cintron, 435 Mass. 509, 518 (2001). Nevertheless, there is some surface appeal to the plaintiffs’ contention that credibility in this instance is irrelevant since the jury already found in favor of the plaintiffs against Merrill Lynch and thus the only open issue is whether as a matter of legal sufficiency rather than credibility, there was enough evidence introduced to permit the jury verdict to stand; the plaintiffs argue that since Paley’s new information supplies the very evidence I previously found to be lacking, the jury’s verdict should be reinstated.
I cannot accept the plaintiffs’ argument. Where, as here, Paley’s testimony does raise very substantial credibility issues, acceptance of the plaintiffs’ proposed conclusion would be unfair to Merrill Lynch. Levine continues vigorously to deny ever speaking with Paley, and indeed to deny even knowing Paley’s name until the plaintiffs brought these cases. If the plaintiffs are entitled to any relief from the order allowing judgment NOV, I believe the appropriate form of relief is a new trial, where a jury may consider the conflicting evidence offered by Paley and Levine, and reach their own conclusion.
2. David Patterson
The evidence offered by David Patterson speaks to the same substantive points as Paley’s. That is, Patterson’s testimony concerning his telephone conversations with Levine at Merrill Lynch on October 21 and 22, 1998, and his letter with its attachments that he faxed and mailed to Levine on October 23, 1998, supply evidence supporting the elements of: (a) actual knowledge on Merrill Lynch’s part (through Levine) that the funds Benistar Property deposited with Merrill Lynch were client funds and intended to be held in escrow and that in using these client funds for option trading, Benistar Property was likely breaching its fiduciary duly to the clients; and (b) substantial assistance being provided by Merrill Lynch to Benistar Property and the individual defendants in their breaches of fiduciary duty and conversion.
In contrast to Paley’s testimony, the testimony of Patterson about the information he supplied to Levine was specific and credible.[15] Moreover, it was supported by Patterson’s contemporaneous client billing records, his telephone records (which include records of the fax sent to Merrill Lynch) as well as the fax that Levine sent from his Merrill Lynch office to Patterson on October 22, 1998.
Despite the strength of Patterson’s evidence, there is a real question about its status as “newly discovered.” Merrill Lynch has demonstrated that in fact, plaintiffs’ counsel had obtained, through discovery conducted before trial, a copy of the October 23, 1998', letter Patterson sent to Levine. This letter states in relevant part as follows.
Gerald R. Levine
Merrill Lynch
Fifth Avenue Financial Center
717 Fifth Avenue-6th Floor
Re: Exchangor: Jane W. Carey
367 Marlboro Street,
Boston, MA
Dear Mr. Levine:
Enclosed please find one fully executed copy of the Escrow Agreement under which the funds will be held. Also enclosed are Exchange Agreement, and ML Account Selection Form and Benistar’s Wiring Instructions.
The funds . . . should be wired out today by the closing attorney’s office to Merrill Lynch pursuant to the terms of the enclosed Wiring Instructions.
For your information the funds will be held in a Merrill Lynch account pursuant to the Escrow Agreement with Benistar’s officer, Daniel B. Carpenter being the single signatory on the account.
Very truly yours,
s/ David D. Patterson
Enc.
cc. w/o enc. Daniel E. Carpenter, Chairman, Benistar Property Exchange Trust Co., Inc. Martin Paley, President, Benistar Property Exchange
(Emphasis in original).[16]
The copy of Patterson’s letter, by itself, would not be admissible in evidence and, by itself, does not establish “actual knowledge” on the part of Levine or Merrill Lynch. However, the letter certainly raises red flags concerning what information about Benistar Property’s business had been sent to Levine and Merrill Lynch. At the very least, the letter offered the plaintiffs some evidence to question Levine about, and would seem to put the plaintiffs on notice that David Patterson might *467 be a very fruitful source of information about Merrill Lynch. It appears the plaintiffs did not do anything with this letter before or during trial, and they do not offer any explanation for why this was so.[17]
Given that the plaintiffs had a copy of this letter from Patterson to Levine before trial, it might well be argued that neither it nor indeed any of David Patterson’s testimony and records can be considered newly discovered. See, eg., U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 52 (1st Cir. 2002). There are two reasons, however, that persuade me that Patterson’s evidence should not be rejected in ruling on the plaintiffs’ motion to reinstate.
First, in light of all the records supporting the conclusion that Patterson did indeed send this letter and its attachments to Levine at Merrill Lynch on October 23, 1998, and did speak with Levine at least on October 22, 1998, one might well expect that Merrill Lynch itself would have a copy of the Patterson letter and its attachments. However, despite testimony from Levine that his brokerage group filed and retained all correspondence relating to their clients and that they retained all Benistar-related correspondence and documents, and despite pre-trial document requests of the plaintiffs to Merrill Lynch that squarely covered this type of correspondence, Merrill Lynch never produced a copy of the Patterson correspondence from its files before, during, or after the jury trial.[18] While the plaintiffs accuse Merrill Lynch of refusing intentionally to produce these documents as part of a cover-up scheme, Merrill Lynch states that it does not have any copy of these documents, and therefore could not produce them. At this juncture, the plaintiffs have not established that Merrill Lynch has intentionally made the documents unavailable for discovery.[19] Nevertheless, on the present record, it is at least fair to say that Merrill Lynch should have had these documents in its files, which would have led to their production. In these circumstances, it seems unfair to lay the blame entirely at the feet of the plaintiffs for failing to pick up on the significance of Paley’s production of a one page letter from a lawyer representing a Benistar Property exehangor who was not in any way connected to the plaintiffs or their case.
The second reason for declining to reject the Patterson evidence relates to the plaintiffs’ position in bringing this motion. Unlike what is probably the usual setting for a plaintiffs Rule 60(b)(2) motion, the plaintiffs here did not lose before the juiy the first time around and therefore do not ask for the opportunity to retiy the case and change the jury’s verdict based on the claimed newly discovered evidence. Rather, they seek to reinstate the jury’s verdict in their favor based on “new” evidence that fills what the ruling on the motion for judgment NOV determined were evidentiary holes in their case. Because the plaintiffs prevailed before the jury, there may be reason to be somewhat less rigid in applying the principle that evidence must not have been available to be considered “newly discovered” under Rule 60(b)(2). The reason to order a new trial rather than grant the plaintiffs’ request for reinstatement of the jury verdict is not to benefit the plaintiffs but to give Merrill Lynch the chance to contest the new evidence.
3. Conclusion
The evidence that the plaintiffs have presented in connection with their motion to reinstate does support their claim that (1) Merrill Lynch had actual knowledge at least that the defendants, in using the Benistar Property clients’ funds for uncovered option trading, were breaching fiduciary duties owed to those clients, and (2) provided substantial assistance to the defendants in this misconduct. Because the plaintiffs prevailed before the jury on their claims against Merrill Lynch, their claim for relief under Rule 60(b)(2) stands in a different and perhaps somewhat stronger position than might otherwise be the case. Moreover, although I believe Paley’s evidence standing on its own would not be likely to persuade me to grant relief to the plaintiffs, when the Patterson evidence is added to the mix, the balance changes. At the same time, I conclude that a reinstatement of the jury’s verdict without giving Merrill Lynch the opportunity to challenge the import of the newly proffered evidence before a jury would be inequitable. [20] The conflicting rights and interests of these parties would be served more fairly by granting the plaintiffs a new trial on their claims against Merrill Lynch.
ORDER
For the foregoing reasons, it is ordered that the plaintiffs’ request to reinstate the jury’s verdict against the defendant Merrill Lynch is denied, but the plaintiffs are entitled to a new trial on all their claims against this defendant.

Benistar Property, Daniel Carpenter and Molly Carpenter are sometimes referred to collectively in this memorandum as “the Benistar defendants.”

The Benistar defendants as well as Martin Paley also moved for judgment NOV or for a new trial. I denied these motions.

following the allowance of Merrill Lynch’s motion for JNOV in February 2004, Merrill Lynch played no further role in any of the remaining proceedings. Merrill Lynch, however, never moved for entry of a separate and final judgment pursuant to Mass.R.Civ.P. 54(b). After the resolution of the plaintiffs’ various non-jury claims against all the defendants in December of 2003, I requested the plaintiffs to prepare a proposed form of judgment or judgments for all the consolidated cases. The plaintiffs had not done so by the time they *468 filed the present motion to reinstate the jury verdict against Merrill Lynch in February 2004.

The plaintiffs’ motion to reinstate was filed on February 24, 2004, (just) within the year limit that governs motions for relief under Mass.R.Civ.P. 60(b)(2). Compare Poskus v. Lombardo's of Randolph, Inc., 48 Mass.App.Ct. 527, 527-28 (2000). Although Merrill Lynch complains that the affidavit of David Patterson, one of the sources of “new” evidence on which the plaintiffs rely to support their motion, was not filed until March 12, 2004, more than one year from the date of the judgment NOV, and should not be considered. I disagree. The critical date for purposes of Rule 60(b)(2) appears to be the date the actual motion was filed. I do not consider further any issue about the timeliness of the plaintiffs’ motion.
There is also pending a separate motion by the Benistar defendants for a new trial that is the subject of a separate memorandum of decision and order.

Since the plaintiffs’ consumer protection claims essentially depended on proof of their claims of aiding and abetting, I concluded that without sufficient evidence to warrant the jury verdicts on the latter, there was also an insufficient basis for the jury verdicts on the consumer protection claims.

At the evidentiary hearing on this motion, Paley testified about this conversation.

Patterson’s client, Jane Carey, was never a party in any of these cases, and appears to have had no connection with any of the plaintiffs or their counsel. Her §1031 transaction was successfully completed, and she has never asserted any claims against Benistar Property or any of the other defendants in these cases.

Patterson credibly testified at the motion hearing to his conversations with Levine and also testified about the specific Benistar Properly agreements he had sent to Levine, including a copy of the escrow agreement that his client and Benistar Property had executed. Copies of Patterson’s billing records, telephone records, and of his October 23,1998, letter to Levine, with attachments, were introduced in evidence at that hearing. The plaintiffs have submitted proposed findings of fact in connection with their motion to reinstate. I adopt the plaintiffs’ proposed findings concerning David Patterson that are set out on pp. 3-6 of those proposed findings.

A11 the plaintiffs were §1031 “exchangors” using Benistar Properly as their qualified § 1031 intermediary. Their funds were used by Benistar Property (and derivatively the individual defendants) for naked or uncovered option trading on the stock market, and were lost as a result of the trading losses suffered by Benistar Property through the beginning of January 2001.

Rule 60(b)(2) provides in relevant part:
On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)

This “actual knowledge” evidence goes more to the plaintiffs’ claim of aiding and abetting breach of fiduciary duty than it does to the claim of aiding and abetting conversion. However, if there had been sufficient proof of aiding and abetting breach of fiduciary duty alone at trial, Merrill Lynch’s motion for judgment NOV on that count as well as the consumer protection counts would have been denied.

It is true that Paley appears to have decided to waive the Fifth Amendment privilege after the United States obtained indictments against Daniel Carpenter for offenses related to the Benistar operations, but did not indict Paley. Apparently, however, Paley has no formal agreement with the Federal prosecutors that he will not be indicted.

Patterson testified that he did not contact the plaintiffs to provide this information about his dealings with Merrill Lynch and Levine until February of2004, even though he had learned from a newspaper article in February 2003 about Merrill Lynch’s motion for judgment NOV and its allowance. He stated that he had first approached his client in 2003 after learning of the judgment NOV, and had raised with her at that time the possibility of communicating with the plaintiffs’ counsel what they knew about Merrill Lynch; she did not give authorization to do so. In February 2004, after reading an article concerning the plaintiffs’ efforts to collect the damages awarded against the defendants other than Merrill Lynch, Patterson stated he spoke to his client again, and at this point she authorized him to speak to plaintiffs’ counsel. Although Patterson’s delay in contacting the plaintiffs’ counsel was initially of concern to me, I find credible the explanation Patterson gave in his testimony at the motion hearing.

The letter was apparently produced by Paley as part of a supplemental response to plaintiffs’ repeated document requests and motions to compel production of documents in 2001 and 2002. Also produced in the Paley supplemental response was a copy of a fax cover sheet dated October 23, 1998, from David Patterson to Martin Paley, which states in the “Comments” section, “Copy of ML Letter." According to plaintiffs’ counsel, Paley had produced (after several orders to do so) nineteen boxes of documents in February 2002, and then in July 2002 produced another four or five boxes. (See affidavit of Colleen C. Cook dated April 9, 2004, ¶¶ 10, 11.) It appears that the letter and the fax cover sheet were in one of the boxes included in the supplemental production, and at least in June of 2004, were held in the files of the plaintiffs’ counsel in a separate box along with other documents from the supplemental Paley production. (See supplemental affidavit of Lara N. Gelbwasser dated June 23, 2004, ¶¶5-8.)

The affidavit of Colleen C. Cook that the plaintiffs filed in April 2004 (see note 16 above) does not appear to address this specific letter. The plaintiffs have offered no response to the supplemental affidavit of Lara N. Gelbwasser (see note 16).

Levine testified at the motion hearing that all Benistar files and Benistar-related documents had been sent from his group to the legal department at Merrill Lynch at some point well before the juxy trial. Although there was a mid-trial production of documents by Merrill Lynch that seems to have come from such files, the Patterson correspondence was not included.

For this reason, I do not accept the plaintiffs’ contention that their motion to reinstate may be considered and allowed under Rule 60(b)(3), which concerns relief from judgment or order because of fraud or other misconduct by an adverse party.

Even the Patterson evidence raises some questions. For example, despite Patterson’s testimony about what he told Levine concerning his client’s funds and his expectation that Merrill Lynch would be setting up some kind of escrow account, Levine sent Patterson account documents that had nothing to do with escrows or third-party funds, and Patterson never followed up with Levine. Merrill Lynch should be able to explore the issues raised by the discrepancy between what Patterson sought and what he obtained. Moreover, Levine denies ever having received the Patterson correspondence, and has no memory of ever having had the conversation with Patterson that Patterson has described. Merrill Lynch has a right to present this evidence to a jury.