2000 SD 103

**Kathy SJOMELING, Plaintiff and Appellee,**

v.

**Steve STUBER, Defendant and Appellant.**

**No. 21404.**

Supreme Court of South Dakota.

Considered on Briefs July 6, 2000.

Decided Aug. 9, 2000.

**614**

Robert A. Haivala, Sturgis, Attorney for plaintiff and appellee.

Gordon D. Swanson, Hansen, Hubbard & Swanson, Sturgis, Attorneys for defendant appellant.

PER CURIAM.

[¶ 1.] Steve Stuber appeals the denial of a motion to modify or set aside a protection order. We affirm.

## FACTS

[¶ 2.] Stuber and Kathy Sjomeling are originally from Watertown. They began dating in late 1998 and became engaged that December. In February 1999, Sjomeling broke off the engagement and moved to Sioux Falls. The initial break-up was apparently amicable and the parties continued to maintain a friendship and casual dating relationship for a period of time. However, as time went on, Sjomeling noted Stuber's possessiveness and frustration with their relationship and became convinced that she did not want to remain with him.

[¶ 3.] On June 1, Sjomeling was staying with a friend in Watertown when Stuber made an uninvited visit to the premises. Sjomeling became angry and frustrated with Stuber and told him to stay away from her. Although Stuber left without incident, Sjomeling received a letter from him a day or two later telling her she was too much for him and that he did not want anything to do with her. Sjomeling did not respond to the first letter and received a second letter on June 19. In this letter, Stuber again advised he wanted nothing further to do with Sjomeling, but concluded by stating: "I still believe that God meant for us to be together and I know in my heart that if you choose you could treat me with respect and love me."

[¶ 4.] Sjomeling owned the home in Watertown where Stuber was living and, in his June 19 letter, Stuber also gave notice of his intention to move out of Sjomeling's home by September 1. When she received the letter, Sjomeling contacted a realtor about selling the home and phoned Stuber to tell him she would be meeting the real-

tor at the house. Although Sjomeling told Stuber she did not care if he was present, Stuber said he would not be at home. Sjomeling then met the realtor, but Stuber returned as Sjomeling finished showing the home. Despite Stuber's unexpected presence, there were no confrontations or incidents at the time.

[¶ 5.] Over the summer of 1999, Sjomeling formulated plans to move across the state to the northern Black Hills region in order to be closer to some family. As Sjomeling was beginning preparations for her move in early July, she ran into a friend of Stuber's. Sjomeling told Stuber's friend she anticipated Stuber might bother her in the Hills and that she would get a protection order if she needed to. Sjomeling later received a call from Stuber begging her not to get a protection order and telling her that he was suicidal. Stuber also told Sjomeling he was going through a very rough period and would need to send her cards to get through the difficult time. Sjomeling replied that if it would keep him from "blowing [his] head off" he should send the cards.

[¶ 6.] On July 20, Sjomeling contacted Stuber to tell him she would be moving her things out of the Watertown home. Although Sjomeling told Stuber she didn't care whether he was there or not, Stuber again indicated he would not be on the premises. Yet, when Sjomeling arrived with some friends to help her move, Stuber was still at home. Sjomeling packed her things and left without incident.

[¶ 7.] On July 28, Sjomeling received a brief phone call from Stuber at her sister's residence in Sturgis. Stuber advised Sjomeling he would be short with his next rental payment and the conversation was concluded. On August 4, Sjomeling received a card and picture from Stuber telling her he was thinking of her with his whole heart. Although these were Sjomeling's last direct contacts with Stuber, he continued to communicate with various members of her family to inquire about her and express his frustrations with her

and his difficulties with their break-up and, in some instances, expressing suicidal thoughts. In that vein, Stuber went so far as to plan his suicide, to procure a hose to run from his exhaust into his vehicle and to communicate with Sjomeling's family members about his will and his intention to leave everything to Sjomeling.

[¶ 8.] Toward the end of August, Sjomeling's mother and sister informed Sjomeling that Stuber told them he had moved to Spearfish, a community seventeen miles from Sjomeling's residence in Sturgis, to accept a sales position covering territory in Wyoming and Montana. Stuber had also told Sjomeling's mother and sister that he did not want Sjomeling to know he was in the area. Sjomeling became alarmed and filed a petition for an ex parte temporary protection order pursuant to the stalking statutes in SDCL ch. 22–19A. The temporary order was issued and a hearing was set for October 14 on issuance of an extended protection order. The hearing was held as scheduled and evidence was presented on behalf of both parties. In addition to the foregoing facts, additional evidence was elicited establishing that Stuber was a recovering alcoholic on probation for a felony burglary conviction. The conviction stemmed from an incident in February 1998 where Stuber became extremely intoxicated, stopped by his office, couldn't get the key in the door and broke down his own office door and several other doors in the building.

[¶ 9.] Although the trial court abbreviated the protection order hearing for scheduling reasons, neither party requested a continuance. At the close of the hearing, the trial court entered a protection order prohibiting Stuber from contacting Sjomeling directly or through intermediaries for a period of one year. Approximately a month later, Stuber filed a motion to modify or set aside the protection order on the basis that the abbreviated hearing had denied him the opportunity to present evidence establishing there was no basis for entry of a protection order. A hearing on

the motion was held on December 20, 1999 and, at the close of the hearing, the trial court entered findings of fact, conclusions of law and an order continuing the protection order in full force and effect. Stuber appeals.

## ISSUE

**[¶ 10.] Did the trial court abuse its discretion in refusing to modify or set aside Sjomeling's protection order?**

[¶ 11.] This Court has not previously set forth its standards for reviewing the issuance of protection orders or restraining orders pursuant to SDCL ch 22–19A. It has, however, recognized that such orders are a form of injunction. *See State v. Pollman,* 1997 SD 36, ¶ 15, 562 N.W.2d 105, 108 (temporary restraining order a form of injunction prohibiting action temporarily pending hearing on merits of permanent injunction). *See also* 42 Am.Jur.2d *Injunctions* § 327 (1969) (temporary restraining order is in effect an injunction).

> Granting or denying an injunction rests in the sound discretion of the trial court. We will not disturb a ruling on injunctive relief unless we find an abuse of discretion. An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence.

*Hendrickson v. Wagners, Inc.,* 1999 SD 74, ¶ 14, 598 N.W.2d 507, 511 (citations omitted) (quoting *Knodel v. Kassel Township,* 1998 SD 73, ¶ 6, 581 N.W.2d 504, 506).

[¶ 12.] Generally, an injunction may be modified only on a showing of changed conditions. *See* 42 AmJur2d *Injunctions* § 334 (1969)(court which rendered decree has power to dissolve or modify injunction where the grounds and reasons for which the injunction was granted no longer exist by reason of changed conditions). Jurisdiction to modify protection orders issued pursuant to SDCL ch 22–19A is explicitly granted by SDCL 22–19A–14: "Upon application, notice to all parties, and hearing, the court may modify the terms of an existing order for protection."

[¶ 13.] The courts' power to modify injunctions and protection orders is also recognized in the Rules of Civil Procedure:

> Rule 60(b) of the Federal Rules of Civil Procedure (which has also been adopted in several states [including South Dakota[1]]) provides that the court may relieve a party from a final judgment, order, or proceeding on various grounds, including the ones that "it is no longer equitable that the judgment should have prospective application," or that there is "any other reason justifying relief from the operation of the judgment." This rule makes it clear that the appropriate court may modify or revoke a permanent injunction as changed circumstances may dictate.

42 Am.Jur.2d *Injunctions* § 324 (1969)(footnote added).

[¶ 14.] In a discussion of the power to modify judgments and injunctions under Rule 60(b), it has been written that:

> The fact that the rule allows relief if it is "no longer equitable" for the judgment to have prospective application is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable. As the Court said in [*United*

---

1. *See* SDCL 15–6–60(b)(5), (6):

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> * * *
> (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) Any other reason justifying relief from the operation of the judgment.

*States v. Swift & Company*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) ]:

> We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting.

It is clear that a strong showing is required before an injunction or other prospective judgment will be modified. Mere passage of time is not enough. Again the rule is laid down in the Swift case:

> Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

Because the standard is an exacting one, many applications for relief on this ground are denied. But on an adequate showing the courts will provide relief if it no longer is equitable that the judgment be enforced, whether because of subsequent legislation, a change in the decisional law, or a change in the operative facts.

11 Charles A. Wright et al., *Federal Practice and Procedure* § 2863 (2d ed. 1995).

[¶ 15.] Applying these principles in the instant case yields no basis for finding an abuse of discretion in the trial court's denial of the motion to modify or set aside the protection order. As grounds for the motion, Stuber simply argued the statutory requirements for issuance of the protection order never existed. This was quite clearly an attempt to relitigate issues resolved with the entry of the protection order. In view of the above principles, the trial court quite properly rejected this attempt.

[¶ 16.] The only change of circumstances alluded to by Stuber during the motion hearing was the fact that he moved back to Watertown after issuance of the protection order. However Stuber's past actions indicate his adeptness at making quick moves to be near or far away from Sjomeling. In view of this demonstrated mobility and in view of his bizarre actions, his propensity toward alcoholism and violent acts and his admitted suicidal tendencies, Stuber's move back to Watertown fails to constitute a substantial basis for modification of the protection order. As the trial court concluded, Stuber's actions have demonstrated a stubborn non-acceptance of the end of his relationship with Sjomeling. This non-acceptance is not necessarily quelled by Stuber's return to Watertown. Accordingly, the trial court was well placed in rejecting his motion to modify or set aside Sjomeling's protection order and did not abuse its discretion.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.