MARY A. MITCHELL *vs.* JAMES H. MITCHELL, THIRD.

No. 03-P-222.

Middlesex. April 14, 2004. - January 19, 2005.

Present: DUFFLY, KANTROWITZ, & GREEN, JJ.

*Abuse Prevention. Protective Order. Statute,* Construction. *Practice, Civil,* Judicial discretion, Relief from judgment. *Judgment,* Relief from judgment.

This court, in determining the appropriate standard for deciding a motion to vacate retroactively, on the ground of newly discovered evidence, a protective order issued under G. L. c. 209A, concluded that such a motion cannot properly be granted unless it is found that the evidence relied on was not available to the party seeking relief for introduction at the original hearing by the exercise of reasonable diligence, and that such evidence is material not only in the sense that it is relevant and admissible, but also in the sense that it is important evidence of such a nature that it likely would have affected the result had it been available at the time [774-775]; therefore, a Probate Court judge erred in granting a husband's motion seeking to vacate retroactively a G. L. c. 209A protective order issued in favor of his wife, where the evidence introduced by the husband (which consisted of the wife's conduct subsequent to the issuance of the order) served only as an after the fact challenge to the wife's credibility at the original hearing [775-776].

This court, in determining the appropriate standard for deciding a motion for relief from prospective application of an abuse prevention order issued under G. L. c. 209A, concluded that where such an order is final, and the motion for relief amounts to a collateral attack on that order, it should be set aside only in the most extraordinary circumstances and where it has been clearly and convincingly established that the order is no longer needed to protect the victim from harm or the reasonable fear of serious harm, and this court concluded further that if a judge determines that it is appropriate to allow such a motion, the decision should be supported by findings of fact [776-781]; thus, even taking as true averments of fact in a husband's verified motion to vacate an abuse prevention order, evidence that the wife might have acquiesced in some contact with the husband (occasioned, in large part, by the unusual circumstance of the husband's mother's funeral) did not suffice to meet the husband's burden, and it was therefore error for the motion judge to terminate the order [781].

COMPLAINT for protection from abuse filed in the Middlesex

Division of the Probate and Family Court Department on December 20, 2001.

A motion for reconsideration was heard by *Dorothy M. Gibson,* J.

*Judith Farris Bowman* for Mary A. Mitchell.

*James H. Mitchell, III,* pro se.

DUFFLY, J. Six months after Mary Mitchell obtained a G. L. c. 209A abuse prevention order against her husband, James Mitchell, a judge of the Probate Court vacated the order on the husband's motion seeking to reconsider or vacate it. We consider in this appeal by the wife the appropriate standard for deciding a motion to reconsider or vacate a c. 209A order, and whether the husband's evidence was sufficient to support the judge's decision. We conclude that it was not and, therefore, that it was error to vacate the order.

1. *Background.* After suffering from more than ten years of verbal and physical abuse inflicted by the husband, the wife, on December 20, 2001, filed a complaint for protection from abuse under c. 209A, supported by her affidavit and three police reports.[1] An ex parte abuse prevention order was issued that same day directing the husband to (among other things) refrain from abusing or contacting the wife. The husband appeared pro se at a hearing on January 3, 2002, the date on which the initial order was fixed to expire, and after hearing, the order was extended for one year, to January 3, 2003. The husband did not appeal from the extended order.

On June 20, 2002, the husband filed a verified motion requesting the court "to reconsider or vacate" the order dated

---

[1]We accept as fact the wife's averments in her affidavit, including that the husband had kicked and hit her, pulled her hair, and threatened to kill her if she attempted to "get anything" through separation or divorce or if she divulged to the court certain information concerning the parties' finances, and that she was terrified of the husband and feared for her life. This is because there were no contrary findings made in connection with the issuance of the c. 209A order, which ordered the husband (1) not to abuse the wife; (2) to have no contact with the wife, in person, by telephone, in writing, or otherwise, and to stay at least fifty yards away from her "even if the [wife] seems to allow or request contact"; and (3) to surrender any guns or licenses to the local police department because "[t]here is a substantial likelihood of immediate danger of abuse."

January 3, 2002; in the motion he stated that the wife had contacted him repeatedly by telephone since the issuance of the order and had spent time with him in Los Angeles while attending the funeral of his mother.[2] In the husband's view, the wife's repeated "contact[s]" with him and her "successful requests" to spend time alone with him while they were in Los Angeles "clearly indicate that she does not fear physical or verbal abuse from [him] and did not fear such abuse in the past." The husband requested that the abuse prevention order be vacated retroactive to January 3, 2002.

A hearing, at which no testimony was taken, was conducted by the same judge who had issued the order of January 3, 2002. The judge had before her the husband's affidavit, the wife's verified opposition to the husband's motion,[3] and an affidavit of

_____

[2]More specifically, the husband averred that he and the wife had engaged in numerous conversations which included both "chit chat" and discussions concerning the parties' pets (all of whom were in the husband's care and needed medical attention) and various civil litigation matters in which the parties were involved. The husband also averred that following the death of his mother in Los Angeles on May 15, 2002, the wife asked him if she could attend the funeral and proposed that they fly to California together; between May 18 and May 25, 2002, while in Los Angeles, he and the wife spent time alone (attending a movie and riding in an automobile) and with others (including at his mother's memorial service, burial, and a reception), often at the wife's request; he had dinner with the wife and his sister on May 19, 2002.

[3]In her opposition, the wife denied or otherwise challenged the husband's averments or his characterizations of events and stated that she continued to be in fear of him. She said, among other things, that she had not voluntarily initiated contact with the husband other than to check on the medical condition of the parties' pets. As for the trip to Los Angeles following the death of the husband's mother, the wife stated that upon receiving an invitation from the husband to attend the services, she consulted with the husband's sister, brother-in-law, and father, who invited her to attend, as they considered her to be part of the family. The husband's family also assured the wife that steps would be taken to ensure her safety. This included paying for a separate flight for her to attend the funeral; arranging for the husband to stay at a hotel while she stayed with members of the husband's family; and attempting to keep the parties separated as much as possible within the circumstances of attending the funeral and related family events. Continuing, the wife stated that there were only two occasions when she was physically alone with the husband (at a movie she had planned to attend with the husband's sister, who backed out at the last moment, and during an automobile ride after the husband's sister sent the husband to pick her up) and that on neither occasion did she choose to be alone with him. The wife said that she was in fear of the husband during the movie and was afraid that the husband would harm her during the

the husband's sister filed by the wife which, in large part, corroborated the wife's description of events and statements concerning her fear of the husband.[4]

The motion to reconsider or vacate was marked "allowed" in the margin. No written findings were made, nor was any oral explanation given at the hearing.[5] This appeal followed.[6]

2. *Discussion.* "[P]reservation of the fundamental human right to be protected from the devastating impact of family violence" is the public policy of this Commonwealth, reflected in numerous statutes addressing the problem of domestic

automobile ride because he blamed her for getting lost, drove at high rates of speed, and raised his voice at her.

[4] In her affidavit, the husband's sister stated that the wife did not wish to be alone with the husband when she arrived in Los Angeles, that the wife asked that the husband be put up in a hotel so that he would not be in the same home with her, that the wife was "shaken" and "upset" after the two instances she was alone with the husband, and that she (the husband's sister) made sure that the wife was not alone with the husband during the remainder of the wife's stay. In addition, the husband's sister stated that, in her view, the wife's fears for her safety if the restraining order were lifted were "not unfounded."

[5] During the hearing the judge posed the following questions, which may provide some insight into the bases for the judge's decision: "What does [the wife] say about the California trip?" and "Did she in fact go out to dinner with him and to the movies?"

[6] No argument is raised that the present case is moot. See generally *Matter of Sturtz*, 410 Mass. 58, 59 (1991) (courts will not, ordinarily, decide moot cases). In any event, we do not consider the matter to be moot, as the wife continues to have a personal stake in the outcome on appeal. Although, in theory, it remains open to the wife to apply for a new c. 209A order, that alternative is not fully equivalent to our review of the judge's order vacating the order that previously protected her.

The standard for extending a c. 209A order does not require a showing of new abuse. See G. L. c. 209A, § 3; *Doe* v. *Keller*, 57 Mass. App. Ct. 776, 778 (2003). See also *Rauseo* v. *Rauseo*, 50 Mass. App. Ct. 911, 913 (2001) ("[a]t a hearing on the plaintiff's request for an extension of an order . . . the plaintiff is not required to re-establish facts sufficient to support an initial grant of an abuse prevention order"). Were the wife to apply anew without the support of further incidents of abuse (and without the benefit of an appellate court decision concluding that the prior order should not have been vacated), a judge acting on her application would quite possibly feel bound by the findings implicit in the vacating of the prior order, that then-existing evidence did not warrant continuing it. Moreover, although relief on an initial c. 209A complaint is limited to one year, "at a renewal hearing, a judge's discretion is broad." *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000) (permanent order may issue at renewal hearing).

violence.[7] *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999). *Litchfield* v. *Litchfield*, 55 Mass. App. Ct. 354, 356 (2002). Cf. *Custody of Vaughn*, 422 Mass. 590, 595 (1996) (in which, in a somewhat different setting, the Supreme Judicial Court defined this fundamental right as nothing less than "the right to live in physical security, free from the fear that brute force will determine the conditions of one's daily life").

General Laws c. 209A sets out a statutory scheme intended to protect victims of abuse, as defined by the statute,[8] through the issuance of abuse prevention orders.[9] See *Turner* v. *Lewis*, 434 Mass. 331, 334 (2001) ("[v]iolence brought on by, or exacerbated by, familial relationships was the 'mischief or imperfection to be remedied' by c. 209A"); *C.O.* v. *M.M.*, 442 Mass. 648, 651 (2004); *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 886 (2002).

Section 3 of c. 209A[10] contemplates the possibility of modification of such orders "at any subsequent time upon motion of either party." It also refers to the vacating of orders, but

---

[7]See, e.g., G. L. c. 208, §§ 18, 34B; G. L. c. 209, § 32; G. L. c. 209A; G. L. c. 209C, § 15.

[8]General Laws c. 209A, § 1, as appearing in St. 1990, c. 403, § 2, defines "abuse" as "the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [and] (c) causing another to engage involuntarily in sexual relations by force, threat or duress."

[9]In addition to an order prohibiting abuse or contact and requiring the defendant to stay away from the plaintiff's home, workplace, or other location, a c. 209A order may contain provisions concerning (among other things) temporary custody and visitation of children, temporary support, the surrender of firearms, and compensation for the plaintiff. See G. L. c. 209A, §§ 3, 3B. As two leading commentators have observed: "In terms of the relief available under the Abuse Prevention Act the statute is sui generis. It incorporates elements of domestic relations relief, criminal relief, equitable relief and tort." 3 Kindregan & Inker, Family Law and Practice § 57.8 (3d ed. 2002).

[10]General Laws c. 209A, § 3, as appearing in St. 1990, c. 403, § 3, provides in pertinent part: "If the plaintiff appears at the court at the date and time the order is to expire, the court shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff or to enter a permanent order. . . . The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order, o[r] allowing an order to expire or be vacated, or for refusing to issue a new order. . . . The court may modify its order at any subsequent time upon motion by either party."

provides that the fact abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient grounds for allowing an order to be vacated. See *Brossard* v. *West Roxbury Div. of the Dist. Court Dept.*, 417 Mass. 183, 185-186 (1994); *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 709 (2001); *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. 746, 750 (2003); Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6.04 commentary, at 98 (Dec. 2000) ("Both parties have the right to ask the court to modify an existing order, by either increasing or decreasing the severity of the terms, or by terminating or vacating the order").

The husband's motion to reconsider or vacate may be construed to contain requests for two distinct forms of relief. First, the husband appears to assert in his motion that the wife's actions and conduct subsequent to the extension of the abuse prevention order indicate that she was not truthful when she stated in her affidavit and through counsel at the c. 209A hearing on January 3, 2002, that she was in fear of him. In the husband's view, this was new evidence that required that the c. 209A order be *vacated retroactively* from January 3, 2002, as the order should never have entered. The husband also asserts in his motion that the wife's actions and conduct during the pendency of the c. 209A order indicate that she is not presently in fear of him, and that therefore there is no ongoing need for the order, which should, accordingly, be terminated. Such an assertion seeks *prospective* relief from the c. 209A order.

We think that a request for either form of relief may be made pursuant to c. 209A, § 3. Chapter 209A does not, however, articulate any standard relative to requests to modify, vacate, or terminate an abuse prevention order. In considering the wife's argument that the order should not have been vacated, we address separately the husband's bases for relief and the standard appropriate to each request.

(a) *Request to vacate c. 209A order retroactively.* Where, as here, a party seeks through asserted "new evidence" to vacate retroactively an abuse prevention order, we think that principles analogous to those applicable to Mass.R.Dom.Rel.P. 60(b)(2) (1975) (hereinafter rule 60[b][2]), and to the identical Mass.R.

Civ.P. 60(b)(2), 365 Mass. 828 (1974), provide a useful guide to judges deciding whether to grant the relief sought.[11]

A request for relief from final judgments or orders under rule 60(b)(2) may be granted on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under [Mass.R.Dom.Rel.P.] 59(b)." Relief on the basis of newly discovered evidence under either rule 59 or rule 60(b)(2) requires the same showing. See *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 894 n.17 (1987); *Van-Alstyne* v. *Whalen*, 15 Mass. App. Ct. 340, 347, 349 n.3 (1983); Smith & Zobel, Rules Practice § 59.5 (1977 & Supp. 2003).

Applying the foregoing concepts, we think that a motion that seeks to vacate retroactively an order issued under c. 209A "on the ground of newly discovered evidence cannot properly be granted unless it is found that the evidence relied on was not available to the party seeking [relief] for introduction at the original trial by the exercise of reasonable diligence, and that such evidence is material not only in the sense that it is relevant and admissible but also in the sense that it is important evidence of such a nature" that it likely would have affected the result had it been available at the time. *DeLuca* v. *Boston Elev. Ry.*, 312 Mass. 495, 497 (1942). See *VanAlstyne* v. *Whalen*, 15 Mass. App. Ct. at 349-351. See also *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. at 894; *Kelly* v. *Kelly*, 12 Mass. App. Ct. 937, 938 (1981) (applying common-law principles of cases cited in *DeLuca* to motion for new trial on ground of newly discovered evidence in domestic relations proceeding); Smith & Zobel, Rules Practice § 59.5 (1977 & Supp. 2003).

Here, even if we were to assume that the wife's conduct subsequent to the issuance of the c. 209A order somehow constitutes newly discovered evidence (a doubtful proposition),

---

[11]The Rules of Domestic Relations Procedure "govern the procedure in the Probate and Family Court Department in all proceedings for . . . abuse prevention as enumerated in General Laws, Chapter[] . . . 209A . . . ." Mass.R.Dom.Rel.P. 1 (1995).

Because Mass.R.Civ.P. 59, 365 Mass. 827 (1974), and 60(b), 365 Mass. 828 (1974), are identical to Mass.R.Dom.Rel.P. 59 and 60(b), decisions construing the former are applicable when construing the latter.

that evidence served only as an after the fact challenge to the wife's credibility at the c. 209A hearing. It is settled that "a new trial will not ordinarily be granted on the ground of newly-discovered evidence which goes only to impeach the credit of a witness at trial." *DeLuca* v. *Boston Elev. Ry.*, 312 Mass. at 500, quoting from *Hopcraft* v. *Kittredge*, 162 Mass. 1, 13 (1894); *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613, 619 (1978); *Commonwealth* v. *Sena*, 441 Mass. 822, 831 (2004).[12] There is nothing in the record before us to support a departure from this general rule. Nor, as we shall discuss more fully, *infra*, was the husband's "new evidence" — of sporadic contacts with the wife during the pendency of the c. 209A order — such that it would likely have affected the result.[13] See *De-Luca* v. *Boston Elev. Ry.*, *supra* at 497; *Swenson* v. *Wood*, 12 Mass. App. Ct. 923, 924 (1981); Smith & Zobel, Rules Practice § 59.5 (1977 & Supp. 2003). The order to vacate was not justified on the basis of the husband's claim of newly discovered evidence.

(b) *Request for relief from prospective application of the order.* The husband's motion construed as a request for relief from prospective application of the abuse prevention order calls for a somewhat different analysis.[14] Such a request falls generally into that category of cases invoking the court's power to modify or prospectively to terminate an abuse prevention order. As we have indicated, that power finds expression in c. 209A, § 3, and is also embodied in the last section of Mass.R.Dom.

---

[12]Rule 60, of course, does not provide for general reconsideration of an order or judgment, and does not provide an avenue for obtaining relief from errors correctable on appeal. See *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 236 (1985); *Piedra* v. *Mercy Hosp., Inc.*, 39 Mass. App. Ct. 184, 187-188 (1995).

[13]To the extent the motion to reconsider or vacate may be construed as a claim that the wife obtained the c. 209A order through fraudulent representations to the court, cf. *Dvorak* v. *Dvorak*, 635 N.W.2d 135, 138-139 (N.D. 2001), there is nothing in the parties' verified statements demonstrating "fraud on the court" as that phrase has been interpreted in our cases. See, e.g., *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 165-166 (1983); *Rockdale Mgt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994); *Paternity of Cheryl*, 434 Mass. 23, 35-36 (2001); *Munshani* v. *Signal Lake Venture Fund II, LP*, 60 Mass. App. Ct. 714, 718-719 (2004).

[14]This opinion does not address the circumstances in which the parties jointly seek an application to terminate the order.

Rel.P. 60(b)(5) (1975), which authorizes a judge to relieve a party from a final order if "it is no longer equitable that the [order] should have prospective application." See generally *Ross* v. *Ross*, 385 Mass. 30, 34 n.1 (1982) (alimony). See also *Sjomeling* v. *Stuber*, 615 N.W.2d 613, 615-617 (S.D. 2000) (no abuse of discretion in denial of motion to set aside a protective order).

There is scant authority discussing the specific standard for modifying or terminating provisions of a c. 209A order. In determining the appropriate standard applicable to such determinations, we look to cases interpreting the statute and also seek guidance from the rules of procedure and statutes and decisions in related areas of the law.

We have said that "[i]n deciding whether to modify or renew an abuse prevention order, a judge's discretion is 'broad.' " *Litchfield* v. *Litchfield*, 55 Mass. App. Ct. 354, 356 (2002), quoting from *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000). Cf. *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. at 748-749 ("[t]he proper exercise of judicial discretion involves making a circumstantially fair and reasonable choice within a range of permitted options"). In *Kraytsberg* v. *Kraytsberg*, 441 Mass. 1021 (2004), the Supreme Judicial Court (in an appeal from a judgment of a single justice of that court denying a petition for relief under G. L. c. 211, § 3) summarized an unpublished Rule 1:28 memorandum and order in which we said that the appellant "neither articulated any reasons why the [abuse prevention] order should be vacated nor suggested that anything of substance had occurred since the order was issued that would have allowed the District Court judge to decide to vacate her order."

Statutes governing divorce and children born out of wedlock provide that certain orders, including those pertaining to alimony and custody, may be modified upon a showing respectively, of a "substantial"[15] or a "material and substantial"[16] change in circumstances (and, in certain child-related matters, upon an additional finding that the modification will be in the child's best

---

[15]General Laws c. 209C, § 20, first sentence, as appearing in St. 1995, c. 38, § 175.

[16]General Laws c. 208, § 28, first sentence, inserted by St. 1985, c. 490, § 1.

interests). See, e.g., G. L. c. 208, § 28; G. L. c. 209C, § 20; *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 674 (2003); *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 718-719 & n.2 (1997).

The provision in Mass.R.Dom.Rel.P. 60(b)(5) authorizing a judge to relieve a party from a final judgment if it is "no longer equitable that the judgment have prospective application" is identical to that in Fed.R.Civ.P. 60(b)(5) and derives from the traditional power of a court of equity to modify its decree in light of changed circumstances. See *Frew* v. *Hawkins*, 540 U.S. 431, 441-442 (2004).[17] In *United States* v. *Swift & Co.*, 286 U.S. 106, 119 (1932) (a case predating the Federal Rules of Civil Procedure), the United States Supreme Court said, regarding a request to modify an injunction contained in a consent decree: "The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. . . . Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed . . . ."[18] In the years after *Swift* was decided, the "grievous wrong" standard was frequently cited as the test for determining whether relief

[17]Historically, a court in equity had the power to modify its decree (more often than not with regard to injunctions) in light of changed conditions or circumstances. See *Frew* v. *Hawkins*, 540 U.S. 431, 439-442 (2004); 11 Wright, Miller & Kane, Federal Practice and Procedure § 2863, at 336 (1995). Protection orders, such as those issued under c. 209A, have been described as a "form" or "species" of injunction. See, e.g., *Pickering* v. *Pickering*, 253 Mich. App. 694, 700 (2002); *Sandbeck* v. *Rockwell*, 524 N.W.2d 846, 848-849 (N.D. 1994); *Sjomeling* v. *Stuber*, 615 N.W.2d 613, 616 (S.D. 2000). "Injunctions directed to the future conduct of parties are the classic example of judgments that have prospective application." Moore's Federal Practice § 60. 47[1][d] (2004).

[18]Based on the language in *Swift*, "most courts . . . established comparatively strict standards for the granting of relief under the equity provision of Rule 60(b)(5)." *Bellevue Manor Assocs.* v. *United States*, 165 F.3d 1249, 1255 (9th Cir. 1999). See *Ross* v. *Ross*, 385 Mass. at 34 n.1 (citing with approval the "grievous wrong" standard for relief under Mass.R.Dom.Rel.P. 60[b][5]); *Thibbitts* v. *Crowley*, 405 Mass. 222, 226 (1989) (relief under Mass. R.Civ.P. 60[b][5] may be granted only upon a showing of "exceptional circumstances"; it was error for judge to modify consent judgment). See also *Sjomeling* v. *Stuber*, 615 N.W. 2d at 616-617; *Cruz-Foster* v. *Foster*, 597 A.2d 927, 929-930 (D.C. 1991); 11 Wright, Miller & Kane, Federal Practice and Procedure § 2863, at 336-350.

should be granted where "it is no longer equitable that the judgment should have prospective application." See *Ross* v. *Ross*, 385 Mass. at 34 n.1.

More recently, the United States Supreme Court has indicated that the "grievous wrong" language in *Swift* "was not intended to take on a talismanic quality," *Rufo* v. *Inmates of Suffolk County Jail*, 502 U.S. 367, 380 (1992) (involving an institutional reform consent decree), and stated that Fed.R.Civ.P. 60(b)(5) permits a "less stringent, more flexible standard." *Rufo* v. *Inmates of Suffolk County Jail*, 502 U.S. at 380. See *Frew* v. *Hawkins*, 540 U.S. at 441-442. The Court held that, under this flexible standard, "a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree . . . ." *Rufo* v. *Inmates of Suffolk County Jail*, 502 U.S. at 393, 384.[19] Cf. Moore's Federal Practice § 60.47[2][c] (2004) (under the analogous provision in Fed.R.Civ.P. 60[b][5], factors to be considered in determining whether there is a "significant change in circumstances" vary with type of case and whether complete dissolution of an injunction is sought or only a modification; "if a party seeks to have a decree set aside entirely, he or she has to show that the decree has served its purpose, and there is no longer any need for the injunction").

In *Alexis Lichine & Cie.* v. *Sacha A. Lichine Estate Selections, Ltd.*, 45 F.3d 582, 586 (1st Cir. 1995), the Court of Appeals for the First Circuit, commenting on *Swift* and *Rufo*, observed that the two cases distinguish between decrees protecting " 'rights fully accrued upon facts so nearly permanent as to be substantially impervious to change' and decrees [that] involv[e] 'the supervision of changing conduct or conditions and are thus provisional and tentative.'. . . *Swift* illustrates the former and *Rufo* the latter. We view this not as a limited dualism but as polar opposites of a continuum . . . ." The Federal rule 60(b)(5), the court in *Alexis Lichine & Cie.* stated, "sets

---

[19]The "heavy weight of authority" conforms to "the better view" that "*Rufo* sets forth a general, flexible standard [not limited to consent decrees in institutional reform litigation] for all petitions brought under the equity provision of Rule 60(b)(5)." *Bellevue Manor Assocs.* v. *United States*, 165 F.3d at 1255-1256 & n.5, and authorities cited. See also Moore's Federal Practice § 60.47[2][b] (2004).

forth the umbrella concept of 'equitable' that both *Swift* and *Rufo* apply to particular, widely disparate fact situations.''

We draw on the foregoing principles to reach our conclusion that the standard for determining whether prospective relief from a c. 209A order is warranted must be a flexible one. The level of impact on the underlying risk from harm that a c. 209A order seeks to protect against will vary from case to case; a flexible approach that incorporates the "continuum" paradigm set out in *Alexis Lichine & Cie., supra,* is necessary to enable a court to deal effectively with the myriad circumstances that may arise during the pendency of an abuse prevention order. A request to modify a provision of the order that bears only tangentially on the safety of the protected party (e.g., certain orders for visitation or support) will fall at one end of the continuum, whereas a defendant's request to terminate an abuse prevention order *in its entirety* will fall at the other end. The greater the likelihood that the safety of the protected party may be put at risk by a modification, the more substantial the showing the party seeking relief must make.[20]

In deciding whether to grant or deny a party's request for relief, the basis on which the order was initially issued is not subject to review or attack. Rather, the court must consider the nature of the relief sought keeping in mind the primary purpose of a c. 209A order: to protect a party from harm or the fear of imminent serious harm.

The husband's claims amounted to a collateral attack on an

---

[20]Thus, for example, an order might in appropriate circumstances be changed to provide for visitation that was not initially provided for, or for adjustments to a visitation schedule necessitated by changed circumstances. See, e.g., *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 702 (2001) (modification to permit telephone contact); *Commonwealth* v. *Stewart*, 52 Mass. App. Ct. 755, 756 (2001) (defendant to remain in vehicle at all times during visitation pick-up and drop-off). In other circumstances, even a request to alter the distance that a defendant was required to stay away from the plaintiff may pose such a level of risk to the plaintiff as to warrant denial. *Litchfield* v. *Litchfield*, 55 Mass. App. Ct. at 354-355, 356.

Here, the husband suggested that ongoing litigation involving the parties necessitated continued contact with the wife by telephone. Had he substantiated that concern in the context of a request to modify the order by permitting telephone contact, the judge would have been authorized to consider the request and to weigh it against any increased risk to the wife's safety or experience of fear that might result from a change in the order.

abuse prevention order that, at least for the one-year period of its duration, was final. Such an abuse prevention order, entered after a hearing that satisfies due process requirements, see, e.g., *C.O.* v. *M.M.*, 442 Mass. at 656-659, should be set aside only in the most extraordinary circumstances and where it has been clearly and convincingly established that the order is no longer needed to protect the victim from harm or the reasonable fear of serious harm.[21] Furthermore, if the judge determines that it is appropriate to allow a motion to vacate or terminate a c. 209A order, the decision should be supported by findings of fact. Cf. *Litchfield* v. *Litchfield*, 55 Mass. App. Ct. at 356 n.6.

Taking as true the admissible averments of fact in the husband's verified motion, the evidence that the wife might have acquiesced in some contact with the husband (occasioned, in large part, by the unusual circumstance of the husband's mother's funeral) does not suffice to meet the husband's heavy burden of demonstrating that the order was no longer needed to protect the wife. Whether measured against a clear and convincing standard of proof, or proof by some lesser standard,[22] the evidence was insufficient to establish that the order was no longer needed to protect the former wife from harm or reasonable fear of serious harm, and it was therefore error to terminate the order.

3. *The remedy.* As we have stated, the abuse prevention order

---

[21]In this case there was evidence before the judge of the long history of the husband's physical abuse of the wife which gave rise to the order of January 3, 2002. See note 1, *supra*. We reiterate, however, that in proceedings to vacate, terminate, or modify a c. 209A order, the nonmoving party has no burden to establish the basis for the issuance of the underlying order.

[22]Although our analysis indicates that a lesser burden may be imposed upon a defendant seeking to modify certain provisions of an abuse prevention order rather than to have it terminated, we do not intend to suggest that such applications to modify should be routine. While we recognize that some situations may warrant adjustments to the order due to changed circumstances, see note 19, *supra*, the opportunity to modify an order may not be abused. Unwarranted requests to modify may themselves be a form of abuse and create a burden on the courts as well as on the opposing party. See *Champagne* v. *Champagne*, 429 Mass. 324, 327 n.2 (1999) ("Annual hearings allow the opportunity for increased contact with the abuser, which may increase the risk of harm to the abused party"). Cf. *Uttaro* v. *Uttaro*, 54 Mass. App. Ct. 871, 874-875 (2002) (probate judge noted plaintiff's repeated contacts with defendant and selective enforcement of existing restraining order).

issued against the husband was to expire on January 3, 2003. Had the order not been vacated (erroneously) on July 11, 2002, the wife would have had the opportunity to seek an extension of the order on the date it was set to expire upon a showing of "continued need" for the order and without a showing of new abuse. See G. L. c. 209A, § 3; *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 929 (1999); *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 889. She should be afforded the same opportunity now.

The order allowing the motion to reconsider and vacate the abuse prevention order is reversed. The wife may, within thirty days of the issuance of the rescript, seek a new order under c. 209A, the issuance of which shall be dependent upon the wife's sustaining her burden of demonstrating a continued need for the order. See *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 889-890. The judge may consider evidence subsequent to January 3, 2003.

*So ordered.*