NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13309

COMMONWEALTH  vs.  DAVID J. POND.


Suffolk.     April 5, 2023. - July 31, 2023.

Present:  Budd, C.J., Lowy, Cypher, Kafker, & Wendlandt, JJ.


Supreme Judicial Court, Superintendence of inferior courts.
    Practice, Criminal, Discovery, Interlocutory appeal.



    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on July 1, 2022.

    The case was considered by Gaziano, J.


    Konstantin Tretyakov, Assistant District Attorney, for the
Commonwealth.
    Christopher DeMayo for the defendant.


    BUDD, C.J.  The Commonwealth appeals from a judgment of a

single justice of this court denying its petition for relief

under G. L. c. 211, § 3, asking that the single justice reverse

an order from a judge in the Superior Court granting the

defendant limited access to the alleged victim's apartment in

preparation for trial.[1]  Discerning no abuse of discretion or error of law, we affirm the single justice's order denying the Commonwealth's petition without reaching its merits.

Background.  A grand jury returned several indictments against the defendant on December 8, 2021, the most serious charge being attempted murder in violation of G. L. c. 265, § 16, arising from allegations that the defendant, Daniel J. Pond, strangled and beat the alleged victim in their shared apartment in Watertown.[2]  At the defendant's arraignment on January 21, 2022, the Commonwealth provided the defendant with some preliminary discovery, which included twenty-six color photographs of the alleged victim's apartment depicting the front door, driveway, entryway, kitchen, and dining room.  The defendant subsequently filed a motion for access to the crime scene, requesting that the judge order that defense counsel and her investigator be granted access to the apartment to take

---

[1] Although the Commonwealth commenced this action by filing a petition in the county court, for convenience we refer to the respondent as the "defendant."

[2] The grand jury also returned indictments for strangulation or suffocation, in violation of G. L. c. 265, § 15D (b); assault and battery on a person age sixty or older, in violation of G. L. c. 265, § 13K (a 1/2); threat to commit a crime (to kill), in violation of G. L. c. 275, § 2; and assault and battery on a person age sixty or older by means of a dangerous weapon (a wall) causing serious bodily injury, in violation of G. L. c. 265, § 15A (c) (i).  The serious bodily injury portion of the last charge was dismissed by agreement at a pretrial hearing.

additional photographs and measurements inside, in order to capture details the defendant asserted were exculpatory and necessary to corroborate portions of his narrative contesting the allegations.

A Superior Court judge heard from both parties at a nonevidentiary hearing on May 19, 2022, and allowed the defendant's motion, but restricted access to the apartment to one hour with a police escort.[3]  The defendant's motion did not identify specific rooms but simply requested access to "the residence," which the judge allowed without limitation.  In granting the motion, the judge noted that "there is really nothing that can substitute for the [d]efense [c]ounsel's eyes on a crime scene," a point she reiterated when denying the Commonwealth's subsequent motion for reconsideration on June 7.

On June 16, 2022, accompanied by a police escort and a representative from the Watertown housing authority, defense counsel and her investigator visited the apartment to complete a walk-through of the crime scene.  The alleged victim, however, was present at the apartment and denied access to two bedrooms and the bathroom.  That same day, the defendant filed a second motion, this time specifically requesting that the judge order

---

[3] The Commonwealth represented to the motion judge that the alleged victim opposed the defendant's request but did not wish to be heard.

access to the three rooms to which his attorney and investigator were denied entry, asserting that those areas were relevant to specific allegations of the defendant's prior bad acts. After another nonevidentiary hearing on June 28, the same motion judge, over the Commonwealth's opposition, granted the defendant access to "all" rooms of the apartment and the home's curtilage, again limited to one hour with a police escort. As with the first motion, the Commonwealth represented to the motion judge that the alleged victim was aware of the defendant's second request and joined the Commonwealth's opposition but did not wish to be heard. The judge stated that she appreciated and regretted the "further intrusion" into the alleged victim's home but noted that her intent in allowing the first motion had been to permit access to the entire apartment, because the breadth of the defendant's request -- and thus the scope of the motion judge's order -- was "really no different than seeing the scene of any other crime. So, if it happened on the street and the [d]efendant was going there to inspect and photograph that area, he would not be limited to that street. He would be able to see the street that's parallel to it, the street that crosses it, what else is in the area. This is essentially akin to that."

The Commonwealth then petitioned a single justice of this court pursuant to G. L. c. 211, § 3, seeking reversal of the motion judge's allowance of the second motion to inspect the

apartment. The single justice denied the petition without reaching the merits, and the Commonwealth appealed. The Commonwealth filed a preliminary memorandum and appendix pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).[4] Concluding that the Commonwealth demonstrated that it was without alternative means to pursue appellate review, we permitted the matter to proceed to full briefing and, in our discretion, oral argument.

Discussion. In cases such as this, where the single justice exercised his discretion to deny the petition without reaching the merits, review by the full court is "strictly limited" to a review of that precise ruling. Commonwealth v. Samuels, 456 Mass. 1025, 1027 n.1 (2010). To accomplish this narrow task, we consider whether the single justice abused his discretion or made a clear error of law in concluding that "the subject of the petition is not sufficiently important and extraordinary" requiring the court's intervention. Commonwealth v. Rodriguez, 484 Mass. 1047, 1049 (2020), quoting Commonwealth v. Fontanez, 482 Mass. 22, 24 (2019).

---

[4] Rule 2:21 applies "[w]hen a single justice denies relief from a challenged interlocutory ruling in the trial court." S.J.C. Rule 2:21 (1). Among other things, it requires the appealing party to file a memorandum "set[ting] forth the reasons why review of the trial court decision cannot adequately be obtained on appeal from any final adverse judgment in the trial court or by other available means." S.J.C. Rule 2:21 (2).

The Commonwealth argues that the Superior Court judge abused her discretion in permitting defense counsel to enter and inspect the alleged victim's apartment a second time because the access sought by the defendant was not relevant to the case, and because the judge failed to consider properly the alleged victim's privacy concerns. The Commonwealth contends that this erroneous ruling raises systemic concerns, because the motion judge created a "new categorical rule" in assessing the defendant's request that will create a chilling effect on future prosecutions and cause irreparable harm to individuals who are victims of a crime in their home.

Although the privacy of alleged crime victims is an important interest, the mere fact that an important interest is implicated in a trial court ruling does not automatically give rise to the type of exceptional circumstances warranting the exercise of the court's extraordinary superintendence powers. See Commonwealth v. Richardson, 454 Mass. 1005, 1006 (2009) (interest in protecting jurors from unwarranted postconviction risk to their safety, although important, did not give rise to "exceptional circumstances" warranting exercise of superintendence power). Here, the Commonwealth does not articulate how the motion judge's discretionary ruling permitting some additional discovery to the defendant in this case amounts to an exceptional circumstance. Contrast Fontanez,

482 Mass. at 26 (exceptional circumstances present where motion judge's pretrial ruling "effectively foreclose[d] the Commonwealth's ability to prosecute a serious crime"). And although we offer no opinion on the merits of the Commonwealth's petition, insomuch as the Commonwealth suggests that the motion judge created a systemic risk by erring on the law, that claim is likewise unsupported where the record reflects that the motion judge applied the long-standing framework for evaluating a defendant's request to inspect the crime scene, see Commonwealth v. Matis, 446 Mass. 632, 635 (2006), as opposed to fashioning a "new categorical rule."[5] In sum, the Commonwealth fails to demonstrate that this matter presents an exceptional circumstance, as opposed to a singular grievance from "a relatively routine trial court ruling." Richardson, supra. The extraordinary powers vested in this court under G. L. c. 211, § 3, are not a means for "second guessing" a trial judge's routine relevance determinations. Commonwealth v. Yelle, 390 Mass. 678, 687 (1984).

Conclusion. The Commonwealth's petition for interlocutory relief presents no systemic or otherwise exceptional circumstances warranting an exercise of this court's

---

[5] To the contrary, it is the Commonwealth that proposes we adopt a new rule governing requests for pretrial access to crime scenes controlled by a third party. We decline to do so.

extraordinary powers of superintendence under G. L. c. 211, § 3. Accordingly, we discern no abuse of discretion or error of law in the single justice's order denying the Commonwealth's petition without reaching its merits.

Judgment affirmed.

CYPHER, J. (concurring).  I agree with the court that the single justice did not abuse his discretion or commit an error of law in declining to reach the merits of the Commonwealth's petition.  Were I to examine the merits, however, I would rule differently.  I take this opportunity to recognize the potentially unjust impact on victims in allowing a criminal defendant's discovery request in these circumstances.  Victims, alleged or proven, generally have limited rights in a criminal trial, as they are not parties.  Whatever interests they do have should be protected, as the Legislature has recognized their interests by passing the victims' bill of rights.  See G. L. c. 258B.  The Commonwealth has no other remedy, and this case presents "a systemic issue that will have an effect not just on the current case but on numerous other cases."  Commonwealth v. Fontanez, 482 Mass. 22, 26 (2019).

In its brief, the Commonwealth enunciated three reasons exceptional circumstances demand extraordinary intervention: (1) the motion judge's ruling "would allow defendants to inspect the entirety of the residence of their victims, regardless of necessity or even a showing of relevance to their case"; (2) this ruling, and the judge's reasoning[1] used to support it,

---

[1] The motion judge reasoned:

"would have a chilling effect on crime victims who are unfortunate [enough] to have had crimes committed upon them in their residences"; and (3) if the ruling were allowed to stand, "the Commonwealth would no longer be able to protect victims from undue harassment." These concerns merit an examination of the facts and the ruling.

The area the defendant seeks to inspect, with which the Commonwealth takes issue on appeal (two bedrooms and a bathroom in the victim's home), are not the locations where the charged crimes are alleged to have occurred. Where the defendant seeks discovery under Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979),

> "the defendant must show (1) that the object (here, the crime scene) is evidentiary and relevant, (2) that it is not otherwise accessible in advance of trial by exercise of due diligence, (3) that he cannot properly prepare for

---

> "I understand that there are particular parts of the home in which certain conduct is alleged to have happened. However, this is part of trial preparation and seeing the scene of this alleged crime is really no different than seeing the scene of any other crime. So, if it happened on the street and the [d]efendant was going there to inspect and photograph that area, he would not be limited to that street. He would be able to see the street that's parallel to it, the street that crosses it, what else is in the area. This is essentially akin to that."

The motion judge is incorrect that allowing the defense to examine the private areas of a victim's home is "no different" from examining the areas surrounding a street where a crime occurred. "In view of the 'sanctity of the home,' 'all details [in the home] are intimate details . . .'" (emphasis in original). Commonwealth v. Porter P., 456 Mass. 254, 260 (2010), quoting Kyllo v. United States, 533 U.S. 27, 37 (2001).

trial without access, and the failure to obtain advance access may tend unreasonably to delay the trial, and (4) that the motion is made in good faith and is not intended as a general 'fishing expedition.'"

Commonwealth v. Matis, 446 Mass. 632, 635 (2006), quoting Commonwealth v. Lampron, 441 Mass. 265, 269 (2004). Because the evidence sought in the defendant's second motion, access to two bedrooms and a bathroom, is not evidentiary and relevant, the defendant fails to meet the first prong to obtain such evidence.

The allegations surround an argument between the defendant and the victim that ensued in the kitchen of their formerly shared home, during which the defendant pulled the victim's hair and struck her head against a wall. According to the Commonwealth's opposition to the defendant's second motion, when the victim then attempted to run out of the home, the defendant dragged her back to the kitchen and strangled her, threatened to kill her, and again struck her head against the wall. During this beating, the victim urinated on herself and was able to "play[] dead" until the defendant walked away. The victim then ran out of her home and drove to a police station, where police observed injuries and bloodstains on the victim.[2]

In his second motion, the defendant requested access to the three rooms, alleging that the defendant's "narrative of what

---

[2] They also observed bloodstains on the defendant's right hand and his shirt, and he admitted to arguing with the victim.

happened is different from the alleged victim."  He also stated in his request that "[t]he narratives [of the victim] include allegations that [the defendant] literally 'pulled her off the toilet' in the bathroom and [that the victim] was abused by [the defendant] in her bedroom."  This does not support the request, however, as these allegations regarded abuse "at some point in the past," not in the presently charged conduct.  The Commonwealth specifically has stated that it does not intend to introduce these prior bad acts at trial.[3]

The defendant did not suggest that he intended to introduce his prior alleged abuse of the victim.  Assuming that the defendant would not introduce evidence of his alleged past abuse of the victim, the examination of these three rooms is not

---

[3] Defense counsel admitted as much at each motion hearing. At the first motion hearing, defense counsel stated that she needed "access to the kitchen, the pantry, the hallways, the doorways, the driveway. . . .  I need to take a look at his room, but I don't really need to go into it."  Counsel stated, "[J]ust to be clear, I need access to the kitchen, hallway, pan-, the kitchen area, hallways, dining room, living room, all the doorways, I need to look at the doors, and the doorways, front, back, and all the doorways, and the driveway."  Despite indicating at the first motion hearing that she did not need to enter the bedroom, in the second motion, defense counsel requested that she be permitted to "take pictures and measurements" of the bedrooms and bathroom.  At the second motion hearing, defense counsel argued that "while nothing that happened on [the date of the charged offenses] occurred in those rooms, this is part of [the victim's] story.  She . . . has asserted that [the defendant] was abusive throughout their relationship and she has specific instances that she uses to document, or explain, or describe the abuse.  And . . . those events occurred in these rooms."

relevant to his charged conduct or any issues that may arise during his trial. The judge's order allows a defendant the right to inspect a victim's entire home on any occasion that a crime is committed against the victim in part of his or her home. Contrast Matis, 446 Mass. at 635 (interior of home and positions and acoustics of relevant rooms "bear directly on whether the crime could have occurred without anyone present in the house at the time being aware of the acts alleged").

The privacy interests of the victim should be considered when ruling on a motion to inspect the victim's home. See State in the Interest of A.B., 219 N.J. 542, 560 (2014) (in exercising discretion whether to allow defendant to inspect victim's home as crime scene, "a court must weigh the accused's need for a particular species of discovery against the impact the discovery request may have on the privacy and lives of . . . alleged victims"). Defendants should not be permitted to use discovery as a method of inflicting further abuse on a victim, particularly in the victim's own home. "[V]ictims have a right '[t]o be free from intimidation, harassment, or abuse.' . . . Any discovery request that has as its objective causing intimidation, harassment, or abuse of an alleged victim is wholly illegitimate and must be denied." Id. at 562.

Our Legislature has recognized the importance of protecting the interests of victims in criminal prosecutions. General Laws

c. 258B was enacted in 1983 to give crime victims certain rights. Del Gallo v. District Attorney for the Suffolk Dist., 488 Mass. 1008, 1009 (2021). One of those rights is "to be provided with information by the prosecutor as to the level of protection available and to receive protection from the local law enforcement agencies from harm and threats of harm arising out of their cooperation with law enforcement and prosecution efforts." G. L. c. 258B, § 3 (d). Particularly in the area of domestic violence, this Commonwealth has a public policy and numerous statutes focusing on "[p]reservation of the fundamental human right to be protected from the devastating impact of family violence." Vittone v. Clairmont, 64 Mass. App. Ct. 479, 484 (2005), quoting Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 772-773 (2005). See Champagne v. Champagne, 429 Mass. 324, 327 (1999).

Not only is it the job of a prosecutor and law enforcement to protect a victim from adverse consequences stemming from his or her participation in a criminal prosecution, but "[j]udges, as well, have a role to play in assuring that victims are afforded their rights under [G. L. c. 258B]." Del Gallo, 488 Mass. at 1009. The allowance of a motion by the defendant to inspect the most intimate areas of a victim's home, where those areas are not relevant to the charged conduct or issues to be presented at trial, is an injustice that demands some

acknowledgement.  Contrast <u>State in the Interest of A.B.</u>, 219 N.J. at 562 ("when the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim . . . , the discovery should be granted").  I write out of concern for the many crime victims who may be retraumatized as the result of such an order, particularly one that lacks adequate foundation in the law.